David M. Poore, SBN 192541
Scott A. Brown, SBN 177099
BROWN | POORE LLP
1350 Treat Blvd., Suite 420
Walnut Creek, California 94597
Telephone:    (925) 943-1166
dpoore@bplegalgroup.com

James Mills, SBN 203783
LAW OFFICES OF JAMES MILLS
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone:    (510) 521-8748
Facsimile:    (510) 277-1413
james@jamesmillslaw.com

Attorneys for Plaintiffs
DOUG DREWRY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUG DREWRY,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | **Case No.**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE AND/OR INJUNCTIVE RELIEF**<br><br>VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 215; VIOLATIONS OF CALIFORNIA LABOR CODE §§ 201 ET SEQ; CONCEALMENT; PROMISSORY ESTOPPEL AND BREACH OF IMPLIED CONTRACT<br><br>**JURY TRIAL DEMANDED** |

-1-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
DREWRY V. HEWLETT-PACKARD COMPANY

Plaintiff DOUG DREWRY complains and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff DOUG DREWRY ("Plaintiff") is, and at all relevant times hereto, has been a resident of the State of California.

2. Plaintiffs are informed and believe and thereby allege that Defendant HEWLETT-PACKARD COMPANY ("Defendant" or "HP") is a corporation whose principal place of business is located in this judicial district within the State of California.

3. At all relevant times, Defendant HP was an employer for purposes of the California Labor Code, as well as the Fair Labor Standards Act ("FLSA"), and employed Plaintiff within the State of California.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1367, in that Plaintiff is asserting federal claims, including violations of the FLSA, and the Court has supplemental jurisdiction over Plaintiff's state law claims, in that they arise from the same common nucleus of operative facts.

5. Venue is proper in the Northern District of California, in that Defendant HP maintains its principal place of business in this judicial district.

6. Plaintiff is unaware of the true identity, nature and capacity of each of the Defendants designated herein as a DOE, whether individual, corporate, associate or otherwise, who therefore sues such defendants by fictitious names pursuant to California Code of Civil Procedure §474. Plaintiff is informed and believes and thereby alleges that each of the Defendants designated herein as a DOE is in some manner responsible for the damages and injuries as are alleged in this Complaint. Upon learning the true identity, nature and capacity of

the DOE Defendants, Plaintiff will amend this Complaint to allege their true names and capacities.

7.  Unless otherwise indicated as acting in individual capacity, Plaintiff is informed and believe, and thereby allege that each of the Defendants herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining Defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such Defendants, and each of them.

## FACTUAL BACKGROUND

8.  Plaintiff Doug Drewry was a former employee of Defendant HP. Defendant hired Plaintiff back on August 1, 2011, as part of HP's purchase of Vertica Systems, Inc. Defendant hired Plaintiff as a Sales Account Manager, whose primary job duties and responsibilities included the selling of Vertica software systems to business clients, as well as meeting a quota for the sale of support services. Plaintiff performed his job duties and responsibilities in an outstanding manner, always meeting or exceeding his sales goals and quotas, and Plaintiff's immediate manager, Chris Matthews, rated Plaintiff as "Exceeds Expectations" on his performance evaluations. In short, Plaintiff was one of the highest performing sales executives on the Americas Vertica team.

9.  Plaintiff's base salary was $162,000.00, along with sales commissions and incentives at a weighted amount, and addition incentives if Plaintiff met his annual quotas in the sale of Vertica products, as well as first year support services. Plaintiff consistently met or exceeded all of his sales requirements. For example, in the year 2012, Plaintiff's gross pay was over $540,000.00.

10. Plaintiff was employed pursuant to a sales incentive plan, which was governed by the Sales Letter issued to Plaintiff. Under the Sales Letter, Plaintiff was entitled to incentive pay, and commissions for the sale of Vertica software and support services, above and beyond his base salary.

11. As part of his employment with HP, Plaintiff was assigned to, and developed DreamWorks Animation ("DreamWorks"), as a potential client. When Plaintiff had worked for Vertica Systems, Inc., he began contacting and negotiating with DreamWorks as a potential client as early as April 2010. When HP purchased Vertica in 2011, Plaintiff's business manager, Mr. Matthews encouraged Plaintiff to continue to pursue DreamWorks as a potential client, as it was a large corporate client that could bring in a substantial amount of revenue for HP. As a result, Plaintiff continued to devote a significant amount of his time making attempts to close a business deal with DreamWorks.

12. From 2011 until 2013, Plaintiff dedicated the vast majority of his time in attempting to secure DreamWorks as a Vertica software client for HP. Plaintiff expended hundreds, if not thousands of hours trying to close the DreamWorks deal. Plaintiff devoted this significant amount of time to close the DreamWorks deal at the expense of his family, his personal life, as well as the other potential business he could have secured at HP.

13. In November 2012, Plaintiff approached his manager, Mr. Matthews, so that he could discuss the DreamWorks deal. During that discussion, Plaintiff asked for Mr. Matthews to confirm that HP would provide Plaintiff with the full incentive pay and commissions on the DreamWorks deal, even though it was taking some time to develop. Most other smaller companies took Plaintiff about four (4) weeks to develop, from a sales perspective, but the DreamWorks deal was taking more than a year. Mr. Matthews again confirmed that Plaintiff would be entitled to his "full commissions" and incentive pay, if Plaintiff was able to secure the

DreamWorks deal. Mr. Matthews expressly advised Plaintiff that HP would honor the Sales Letter. In fact, Mr. Matthews told Plaintiff that he would obtain the DreamWorks commission and incentive pay, and, if the company refused to provide it, Plaintiff would have solid grounds in which to take legal action. Based upon those representations, Plaintiff continued to work as hard as possible to help secure the DreamWorks deal, putting in countless hours of time, at the direct expense of his family, as well as other potential business that could have provided him with significant incentive or commission income.

14. After a significant amount of work, spanning months and years, the DreamWorks deal was set to formally close in June 2013. The deal was valued well in excess of $3 million, and would constitute a major portion of Plaintiff's overall earnings. The deal was done, Plaintiff had completed all the work required to close the deal, and the parties were ready to close.

15. On May 6, 2013, HP issued a "memo" to Plaintiff advising him that "HP has determined that it will not provide sales credit or incentive pay" to Plaintiff for the DreamWorks transaction. Plaintiff was visibly shocked.

16. Plaintiff made an immediate internal complaint to his manager, Mr. Matthews, citing the Sales Letter as the basis for Plaintiff's rightful compensation.

17. In response, on or about July 23, 2013, approximately one month after the DreamWorks deal closed, Defendant HP issued Plaintiff an "amended" Sales Letter, which altered the terms and conditions of his employment and compensation, retroactively, and implicitly admitted that HP should have paid Plaintiff the proper compensation for the DreamWorks deal, when it closed. Plaintiff continued to make internal complaints about the amended sales letter, but Defendant failed to adequately or reasonably investigate Plaintiff's internal complaints, leaving Plaintiff in an uncertain state for several months.

18. As a direct result of HP's refusal to provide Plaintiff with his lawful compensation, Plaintiff was constructively terminated on or about November 25, 2013.

### FIRST CAUSE OF ACTION

(Violations of the FLSA – 29 U.S.C. Section 215 – All Defendants)

19. Plaintiff realleges and incorporates by reference Paragraphs 1 through 18 of this Complaint as though fully set forth herein.

20. The anti-retaliation of the Fair Labor Standards Act, 29 U.S.C. Section 215, prohibits an employer from retaliating or discriminating against an employee for making internal complaints pertaining to the compensation statutes, including commission or incentive pay.

21. Defendant HP violated this provision of the FLSA with regard to Plaintiff when it failed to properly pay Plaintiff his owed compensation, after internal complaints, and then constructively terminated Plaintiff's employment. .

22. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

23. Defendant's conduct is properly characterized as "willful," and, as a result, Defendant is liable for liquidated damages.

### SECOND CAUSE OF ACTION

(Violations of California Labor Code – Failure to Pay all Wages Owed, Waiting Time Penalties – All Defendants)

24. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 23 of this Complaint as fully set forth herein.

25. California Labor Code Sections 201, 202, 203, 204, 218, 223, 226, 510, and the applicable California Industrial Commission Wage Orders, require that Defendant pay all wages owed, compensate employees as promised for work performed, provide itemized wage statements that accurately reflect the wages owed, and provides for waiting time penalties, as well as other relief, for the violations of these provisions.

26. In acting above, Defendants violated the California Labor Code in failing to compensate Plaintiff for all wages, commissions, and incentive pay owed.

27. Plaintiff has made repeated demands for the payment of his wages, but Defendants have refused.

28. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff seeks damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

(Fraud/Concealment – All Defendants)

29. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 28 of this Complaint as fully set forth herein.

30. In acting above, Defendants concealed material information from Plaintiff during the period of time that he was working on the DreamWorks project. Plaintiff is informed and believes that Defendant HP knew that it was not going to provide Plaintiff with the promised DreamWorks compensation and incentive pay for months, if not years, prior to the closing of the DreamWorks' deal, but Defendant knowingly and intentionally concealed this material information, with false promises that Plaintiff would obtain this compensation that was owed to


him. Defendant concealed this information with the intent to induce Plaintiff to continue to the work on the DreamWorks' deal until the moment it was ready to close.

31. Plaintiff reasonably relied upon this information in continuing to dedicate his time, effort, and life to closing the DreamWorks' deal. Had Plaintiff know the true facts surrounding Defendant HP's intent to provide the compensation, he would not have continued to dedicate his time, effort, and life to the deal.

32. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

33. Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, in an amount according to proof.

34. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

## FOURTH CAUSE OF ACTION

(Promissory Estoppel/Implied Contract – All Defendants)

35. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as fully set forth herein

36. In acting above, Defendant HP made promises to Plaintiff to provide certain commissions for the DreamWorks' deal.

37. Plaintiff reasonably relied upon those promises, which were repeated throughout the time that Plaintiff worked on the DreamWorks' deal, including promises from Mr. Matthews, Plaintiff's manager. Absent such promises, Plaintiff would have not elected to demote his time, effort, and life to the DreamWorks' deal.

38. Defendant HP knew or reasonably should have known that Plaintiff had a reasonable expectation to his full commissions and wages on the DreamWorks' deal.

39. As a result, Plaintiff dedicated a significant amount of his available time to close the DreamWorks' deal for Defendant HP, thereby creating an implied contract.

40. Defendant HP breached the implied agreement, and it breached its promises to Plaintiff, after Plaintiff performed all the work required to close the DreamWorks' deal.

41. As a result, Plaintiff is entitled to damages and/or equitable relief, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For prejudgment interest in an amount according to proof;
4. For punitive damages in an amount according to proof;
5. For equitable and/or injunctive relief;
6. For statutory penalties, including liquidated damages;
7. For reasonable attorney's fees and cost of suit therein;
8. For such other and further relief as the court may deem proper.
9. **Plaintiffs demand a trial by jury**.

Dated: October 28, 2015                BROWN | POORE LLP


By:  *//s// David M. Poore*
   David M. Poore
   Attorneys for Plaintiffs

-10-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
DREWRY V. HEWLETT-PACKARD COMPANY